Joro Walker, Esq, USB # 6676
Western Resource Advocates
150 South 600 East, Ste 2A
Salt Lake City, Utah 84102
Phone: (801) 487-9911
Joro.walker@westernresources.org

Anne Mariah Tapp (*pro hac vice*)
Neil Levine (*pro hac vice*)
Grand Canyon Trust
2601 N. Fort Valley Rd
Flagstaff, AZ 86001
Tel: 928-774-7488
atapp@grandcanyontrust.org
nlevine@grandcanyontrust.org

Travis Stills (*pro hac vice*)
Energy and Conservation Law
1911 Main Avenue Suite 238
Durango, Colorado 81301
Tel: 970-375-9231
stills@frontier.net

Attorneys for Plaintiff
*Grand Canyon Trust*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GRAND CANYON TRUST, | Case No. 14-cv-00243-DBP |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND CIVIL PENALTIES** |
| vs. | |
| ENERGY FUELS RESOURCES INC., | |
| Defendant. | |

## INTRODUCTION

1.     Plaintiff Grand Canyon Trust (Trust) brings this lawsuit to enforce violations of the Clean Air Act (CAA), 42 U.S.C. § 7412, against Energy Fuels Resources Inc. (Energy Fuels) at its White Mesa Uranium Mill.  The White Mesa Mill is releasing Radon-222, a cancer-causing gas emitted from the radioactive wastes generated from uranium milling.  White Mesa Mill's tailings impoundments, which store these milling wastes, are not conforming to mandatory CAA emissions limits and work practice standards.  40 C.F.R. §§ 62.251 et seq. (Subpart W).  These limits and standards are designed to curtail releases of Radon-222, which is a CAA-designated hazardous air pollutant. *Id*. Section 112 of the CAA prohibits Energy Fuels from operating White Mesa Mill and emitting Radon-222 in violation of these limits and standards.  42 U.S.C. § 7412(f)(4), § 7412(i)(3)(A).  Consequently, in accordance with the CAA citizen suit provision, 42 U.S.C. § 7604(a), the Trust seeks relief that enforces the CAA emissions standards and limits and assesses civil penalties against Energy Fuels for these violations of law.  Energy Fuels' CAA violations pose a serious and continuing threat to nearby communities, the region's people, and the environment that can be remedied by the statutory relief sought in this complaint. *See e.g*. 42 U.S.C. §§7604 (a),(d-e),(g).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under 42 U.S.C. § 7604(a)(1) (CAA citizen suit provision).  Pursuant to 42 U.S.C. § 7604(b), Plaintiff provided Energy Fuels with notice of intent to sue for CAA violations at White Mesa Mill prior to commencing this action. Notice was also provided to the U.S. Environmental Protection Agency (EPA) and the State of Utah.  Neither the EPA nor the State of Utah has commenced and is diligently prosecuting a civil action in court to enforce the CAA violations that Plaintiff is alleging.

2

3.     Venue is proper in the District Court for the District of Utah pursuant to 42 U.S.C. § 7604(c) and 28 U.S.C. § 1331.

## PARTIES

4.     Plaintiff Grand Canyon Trust is a non-profit corporation with offices in Moab, Utah, Durango and Denver, Colorado and its headquarters in Flagstaff, Arizona.  The Trust has approximately 4,000 members, including those who reside, work, visit, and recreate in Utah and Colorado.  The mission of the Trust is to protect and restore the Colorado Plateau – its spectacular landscapes, flowing rivers, clean air, diversity of plants and animals, and areas of beauty and solitude.  One of the Trust's goals is to ensure that the Colorado Plateau's air is safe for the region's people and visitors, its water resources are free of contaminants for people and wildlife, and that sources emitting air pollutants comply with federal and state laws.  The Trust works to ensure that the Colorado Plateau's resources are used responsibly to sustain the livelihood of present and future generations.

5.     Trust members enjoy the air, lands, and waters adjacent to, nearby, and downwind of the White Mesa Mill.  Trust members live, work, visit and recreate within the area most impacted by the White Mesa Mill's radon emissions, including White Mesa, Blanding, and Bluff, Utah.  Trust members regularly use the private and public lands adjacent to and near White Mesa Mill to pursue their interests -- including hunting, hiking, plant-gathering, camping, water activities, and photographing wildlife and scenery -- scientific study and educational activities. Trust members derive recreational, inspirational, religious, scientific, educational, and aesthetic benefits from their regular use and activities in the area near White Mesa Mill.  Trust members obtain drinking water from groundwater in the region.  Trust members hunt and consume wildlife taken from areas near the White Mesa Mill.  Trust members continue to enjoy their lives,

3

pursue their interests and the aforementioned activities in the areas of White Mesa Mill.  Trust members' use and enjoyment of the areas near White Mesa Mill is greatly enhanced by clean air that is free of hazardous air pollutants, by surface and groundwater that is free of contaminants associated with uranium tailings impoundments, and by tailings impoundments that are fully and promptly closed and reclaimed by the Mill operator.  Trust members are exposed to White Mesa Mill's radon emissions at various times of the year.  Trust members are exposed to contaminants, including Radon-222, released from White Mesa Mill's tailings impoundments into surface and groundwater.  The Trust and its members are persons within the meaning of § 304(a) of the Clean Air Act. 42 U.S.C. § 7604 (a).

6. Energy Fuels' radon emissions and work practice standards at White Mesa Mill violate the Clean Air Act and harm and injure Trust members, including their health, their use and enjoyment of the air, land and waters in the region, their interest in the protection of wildlife, native plants, clean air and water, and their interest in having businesses and regulated entities operating in the region adhere to laws and regulations.  These injuries occur because Energy Fuels has operated and continues to operate White Mesa Mill in violation of the CAA emission limits and work practice standards.  Despite repeated violations, Utah has not imposed civil penalties to bring the White Mesa Mill into compliance with the CAA.  Energy Fuels' violations increase the likelihood that reclamation activities at White Mesa Mill will not occur, be delayed, or result in the public having to pay for cleanup and reclamation activities.

7. The CAA's citizen suit provision authorizes the Trust to bring this action as "private attorney general."  A court order providing declaratory and injunctive relief,  enforcing the CAA standards and limits , and imposing civil penalties against Energy Fuels, and requiring Energy Fuels to fund a supplemental environmental project, will redress the Trust's injuries

resulting from White Mesa Mill's operations and violations of the CAA.

8.     Defendant Energy Fuels, Inc. is a Delaware corporation, which was incorporated in March 1997 under the name International Uranium (USA) Corporation. Energy Fuels' principal place of business and corporate office is located at 225 Union Blvd., Suite 600, Lakewood, Colorado 80228, USA. Energy Fuels' website address is www.energyfuels.com. As of December 31, 2013, Energy Fuels had a working capital of $33.48 million. One of Energy Fuels' wholly owned subsidiaries is EFR White Mesa LLC. Energy Fuels controls EFR White Mesa LLC. Energy Fuels wholly owns and operates the White Mesa Mill. In full operation, the White Mesa Mill can employ up to 150 people, but typically operates below full capacity and with only a few dozen employees. Energy Fuels has operated and is operating White Mesa Mill in violation of the Clean Air Act. Energy Fuels is a "person" within the meaning of section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY BACKGROUND - CLEAN AIR ACT

9.     The Clean Air Act regulates the release of hazardous air pollutants. 42 U.S.C. § 7412. Hazardous air pollutants threaten "adverse human health effects … or adverse environmental effects." Id. § 7412(b)(2). Radon-222 gas is identified as a hazardous air pollutant under the CAA. Id. § 7412(b) (identifying radionuclides, including radon, as hazardous air pollutant); see 44 Fed. Reg. 21,704 (April 11, 1979) (EPA's listing of radionuclides as hazardous air pollutant).

10.    Radon-222 is a cancer-causing radioactive gas that poses a serious health hazard. According to EPA, there is no safe level of radon, as any exposure poses some risk of cancer. Radon-222 is the second leading cause of lung cancer in the United States, resulting in 21,000 deaths annually. In addition, exposure to Radon-222 is linked to genetic defects, and increases in

5

mortality as well as serious irreversible illnesses.

11. Radon-222 is associated with uranium mills. The process of separating uranium from its ore -- milling -- creates a waste material known as "tailings." Because uranium ore generally contains less than 1 percent uranium, uranium milling produces large amounts of tailings. Tailings are collected at mill sites in impoundments that vary in size. Uranium tailings contain significant amounts of radium. Consequently, tailings impoundments are a significant source of Radon-222 emissions. A dry tailings impoundment releases more Radon-222 into the air than those containing water. Water can reduce Radon-222 emissions from tailings. Water does not eliminate the release of Radon-222 from tailings. Using water to control Radon-222 emissions often results in groundwater contamination.

12. Radon-222 atoms emitted from these tailings impoundments will attach to airborne dust particles and can travel many miles in this form before decaying. People downwind of tailings impoundments are exposed to Radon-222. When radioactive dust is inhaled, the dust will stick to lungs where radon and its progeny decay and irradiate the lungs' fluids and tissues, and increase the risk of lung cancer. Short-lived radon progeny decay after several days and emit the alpha radiation that is a significant contribution to radiation dose in most practical radon exposure situations. Proximity to impoundments influences cancer rates, and EPA has found that "the relatively few people who live within a few kilometers of tailings piles may receive individual exposures as much as a hundred times the exposures to individuals at greater distances."

13. CAA Section 112 prohibits stationary sources, such as uranium mills, from emitting hazardous air pollutants, including Radon-222, or operating a stationary source in violation of applicable limitations and standards. 42 U.S.C. § 7412(f)(4) ("No air pollutant to

which a standard under this subsection applies may be emitted from any stationary source in violation of such standard"); id. § 7412(i)(3)(A) ("…no person may operate such source in violation of such standard, limitation or regulation…").  A stationary source is defined as "any source of air pollution." Id. § 7602(z).  Violations of these prohibitions are enforceable through the CAA's citizen suit provision.  Id. § 7604(a)(1).  This provision authorizes suits "against any person … who is alleged to have violated or to be in violation of (A) an emission standard or limitation under this chapter…" Id.  As defined, an "emission standard or limitation" includes the requirements set forth in 42 U.S.C. § 7412, and "any permit term or condition."  42 U.S.C. § 7604(f)(3) & (4).

      14.    The standards and limits governing sources of hazardous air pollutants are found in the CAA's regulations.  In 1989, EPA promulgated regulations to control the emissions of radionuclides from various sources.  54 Fed. Reg. 51,703 (Dec. 15, 1989).  Subpart W of these regulations -- found at 40 C.F.R. §§ 61.250 et seq. -- applies specifically to Radon-222 emissions from tailings impoundments at uranium mills and establishes the relevant limits and standards. 40 C.F.R. § 61.250 (defining uranium mills as those facilities "licensed to manage uranium byproduct materials during and following the processing of uranium ores."), § 61.252 (setting forth emission limits and work practice standards).  The Subpart W regulations require compliance with ground water protection standards set forth in 40 C.F.R. 192.32(a)(2).  40 C.F.R. § 61.252(c) ("All mill owners or operators shall comply with the provisions of 40 CFR 192.32(a).").  Tailings -- referenced in these regulations as "uranium byproduct material" -- are defined as "wastes produced by the extraction or concentration of uranium from any ore processed primarily for its source material content."  40 C.F.R. § 61.251(g).

15. One of the Subpart W standards is an emissions limitation. Radon-222 emissions from a tailings impoundment shall not exceed 20 picocuries per square meter per second (pCi/m$^2$-sec). 40 C.F.R. § 61.252(a). A mill must comply with this standard annually, based on the calendar year. Id. § 61.253. Compliance with this limit is calculated according to the protocols set forth in "Method 115." Id. Among other things, Method 115 prescribes the frequency at which a mill may measure emissions from a tailings impoundment. 54 Fed. Reg. at 51,709. A mill may choose to measure emissions once-a-year, or at weekly, monthly or quarterly intervals. Id. If weekly, monthly or quarterly measurements of emissions are used, radon emissions for each measurement period are averaged. Id. Under Method 115, a mill operator must report any condition or unusual event that occurred during the measurements that could significantly affect the results. Id.

16. Under Subpart W regulations, mills must report their emissions annually, by March 31st of the following calendar year. 40 C.F.R. § 61.254(a). If the 20 pCi/m$^2$-sec emission limit is violated, the mill must measure emissions at monthly or weekly intervals and file monthly reports with the State and EPA. Id. § 61.254(b).

17. Subpart W also contains "work practice" standards that govern tailings impoundments constructed after December 15, 1989. 40 C.F.R. § 61.252(b). EPA adopted these work practice standards to overcome the problem of mills operating multiple, large tailings impoundments that emit significant amounts of Radon-222. 54 Fed. Reg. at 51,679. One purpose of the work practice standards is reduce Radon-222 emissions and protect groundwater by requiring timely closure of tailings cells that have been filed to capacity. These standards address the fact that, at many mill sites, tailings impoundments have been abandoned by the mill operator and were not closed and reclaimed. For example, the ongoing cost of the federal

8

closure and remediation of approximately sixteen million tons of uranium tailings at the Atlas Minerals Corporation site outside Moab, Utah is expected to exceed $1 billion.

18.     These work practice standards vary depending on the mill's process for "disposal" -- or closure -- of impoundments: "phased" or "continuous" disposal.  The disposal of a tailings impoundment occurs after the impoundment can no longer be used, and requires compliance with the closure procedures set forth in 40 C.F.R. § 192.32.  "Phased disposal" means "us[ing] lined impoundments which are filled and then immediately dried and covered to meet all applicable Federal standards."  40 C.F.R. § 61.251(f).  For tailings managed according to a phased disposal process, the work practice standards limit the number and size of tailings impoundments.  Id. § 61.252(b)(1).

19.     For owners and operators managing tailings according to phased disposal, the construction and operation of new (after December 15, 1989) impoundments is prohibited if the owner or operator of the mill is operating more than two tailings impoundments.  40 C.F.R. § 61.252(b)(1).  An operating impoundment is one "being used for the continued placement of new tailings or is in standby status for such placement.  An impoundment is in operation from the day that tailings are first placed in the impoundment until the day that final closure begins."  Id. § 61.251(e).

20.     Interim closure begins when the impoundment is no longer used for placement of new tailings and involves decommissioning activities such as dewatering the tailings and placement of an interim radon barrier.  40 C.F.R. § 192.32(a)(3).

21.     An impoundment enters the final closure phase with the installment of a permanent radon barrier designed to prevent or limit the release of Radon-222 for centuries. 40 C.F.R. § 192.32(a)(4)(i).  Final closure involves placement of several layers of clay, rock and

other materials to create an engineered cap designed to limit Radon-222 release and to protect groundwater by preventing infiltration of water into the tailings.  Id.  Final closure is complete with testing of the permanent radon barrier to ensure effectiveness over a period of centuries and transfer of the impoundment to a government agency for perpetual care.  40 C.F.R. § 192.32(b).

22. Where tailings are managed according to phased disposal work practice standard, the design, construction, and operation of a new impoundment cannot exceed 40 acres in size. 40 C.F.R. § 61.252(b)(1).  This size limitation is designed to limit radon emissions and protect groundwater by ensuring timely and efficient reclamation and closure.  51 Fed. Reg. 34,055, 34,062 (Sept. 24, 1986).

## FACTUAL ALLEGATIONS GIVING RISE TO THE CLAIMS

23. White Mesa Mill processes conventional uranium ore that is mined on the Colorado Plateau.  Currently, the White Mesa Mill is the only conventional uranium mill operating in the United States.  Most of the licensed uranium mills in the United States were closed in the early 1980s and decommissioned under provisions of Title I of the Uranium Mill Tailings Radiation Control Act amendments to the Atomic Energy Act.  The White Mesa Mill is located in San Juan County, Utah, near the White Mesa community populated by members of the Ute Mountain Ute tribe and two of the larger cities in southeastern Utah, Blanding and Bluff.

24. Construction of the White Mesa Mill began in 1979, and operations commenced in May 1980.  Between 1980 and 2008, White Mesa Mill operated at various levels of capacity, but processed 4.5 million tons of uranium ore.  Since at least April 2008, the Mill has been fully operational.  Since at least April 2008, the Mill has operated periodically, with significant idle periods.  Energy Fuels plans to place the White Mesa Mill on standby in the second half of fiscal year of 2014 by discontinuing processing while continuing to receive and stockpile uranium ore

and alternate feed.  Energy Fuels plans to continue operations on a campaign basis, which means intermittent periods of active milling as well as periods of stockpiling feedstock with no active milling   During standby, the tailings continue to emit Radon-222.

25.     Ownership of White Mesa Mill has changed over time.  The Mill was built by a company known as Energy Fuels Nuclear.  In 1984, Energy Fuels Nuclear sold the White Mesa Mill to Umetco Minerals, an affiliate of Union Carbide.  Umetco operated White Mesa Mill until 1994, when it was sold back to Energy Fuels Nuclear.  Shortly thereafter, Energy Fuels Nuclear went bankrupt and ceased operating White Mesa Mill in 1995.  In 1997, the Mill was purchased by International Uranium Corporation.  In 2006, International Uranium Corporation changed its name to Denison Mines as a result of a corporate merger.  In 2012, Energy Fuels acquired Denison Mines' U.S. assets, including White Mesa Mill.

26.     Beginning in 1987, White Mesa Mill began accepting "alternate feed" for processing, supplementing the amount of uranium ore being milled.  Whereas a conventional mill operator typically pays for uranium ore feedstock, a mill owner is paid to accept and dispose of uranium-bearing "alternate feeds."  Alternate feed is another name for radioactive wastes that contain small amounts of uranium-bearing materials.  By processing these radioactive wastes as alternate feed, White Mesa Mill provides hazardous waste sites across the country a means to dispose these wastes without being subject to various federal and state laws (such as, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA)), and without having to undertake removal and remediation actions.  The Environmental Protection Agency has recognized that this practice has potential for abuse where lower disposal fees at economically marginal uranium mills can result in "sham processing" to convert CERCLA wastes into non-CERCLA mill tailings.  Utah regulators have expressed concern that less

11

stringent, cheaper, non-CERCLA disposal of radioactive wastes at uranium mills pose problems, particularly where the technical and economic viability of uranium recovery is doubtful.

27.     In 1995, EPA delegated authority to the State of Utah to regulate uranium mills' emissions of radon and implement 40 C.F.R § 61.250 et seq.  On March 2, 2011, the State of Utah issued Denison a modified "minor source" air quality permit for White Mesa Mill.  The Mill does not require a Title V operating permit.  The Mill's permit incorporates the regulatory requirements set forth in 40 C.F.R. § 61.250 et seq.

28.     Energy Fuels possesses two other permits issued by agencies with the Utah Department of Environmental Quality ("DEQ") pursuant to Utah statutes and regulations - a Groundwater Discharge Permit ("GWDP") and a Radioactive Materials License.  Neither permit governs radon emissions from the Mill's tailings impoundments.  Neither permit exempts Energy Fuels from compliance with federal law.  During 2011, 2012, and 2013, the White Mesa Mill reported consecutive exceedances of groundwater compliance limits under the White Mesa Mill's GWDP for several constituents in several wells.  Instead of issuing fines or requiring compliance, Utah DEQ has agreed to change the groundwater standards.  Utah DEQ is aware of repeated and ongoing Subpart W violations, but has not taken action to enforce the standards. Neither Utah DEQ nor the U.S. Environmental Protection Agency have levied civil penalties to deter future violations of Subpart W.

29.     There are six tailings impoundments at White Mesa Mill, which Energy Fuels refers to as Cell 1, Cell 2, Cell 3, Cell 4A, Cell 4B and Roberts Pond.  Energy Fuels operates each of these tailings impoundments on a "phased disposal" basis. Construction of Cell 1 was completed in June 1981.  Construction of Cell 2 was completed in May 1980.  Construction of Cell 3 was completed in September 1982.  Cells 4A and Cell 4B were constructed after 1989.

Cell 4A was constructed in 2008. Cell 4B was constructed in 2011. Cell 4 was divided into 4A and 4B to avoid the regulatory restriction on the size of a tailings impoundment. Cell 4A exceeds the 40-acre limit on the size of a tailings impoundment. Cell 4B exceeds the 40-acre limit on the size of a tailings impoundment. Cell 1 receives uranium byproduct materials. Cell 2 receives uranium byproduct materials. Cell 3 receives uranium byproduct materials. Cell 4A receives uranium byproduct materials. Cell 4B receives uranium byproduct materials. Roberts Pond receives uranium byproduct materials.

30. Energy Fuels measures Radon-222 emissions from Cell 2 and Cell 3 based on Method 115. Energy Fuels employs Large Area Activated Charcoal Cannisters, which are passive gas absorption sampling devises that determine the flux rate of Radon-222 gas from the surface of tailings impoundments.

### FIRST CLAIM FOR RELIEF
(Violation of the Clean Air Act and implementing regulations, Radon-222 Emission Limit, 40 C.F.R. § 61.252(a))

31. Each and every allegation set forth in this Complaint is incorporated herein by reference.

32. Radon-222 emissions from a uranium mill's tailings impoundment "shall not exceed 20 pCi/m$^2$-sec." 40 C.F.R. § 61.252(a). Compliance with this emission limit is determined annually. Id. § 61.253.

33. Since 1992, Energy Fuels has been measuring and monitoring Radon-222 emissions from Cell 2 once-a-year, every June. Method 115 permits once-a-year monitoring.

34. In 2012, Energy Fuels' operations at White Mesa Mill violated the Radon-222 emission limit. Energy Fuels' June 2012 monitoring revealed violations of the 20 pCi/m$^2$-sec emissions limit. Energy Fuels reported that Radon-222 emissions from Cell 2 in June 2012 were

13

23.10 pCi/m$^2$-sec.  Based on this report, Energy Fuels violated the emissions limit in 2012.

35. This 2012 violation was reaffirmed by additional monitoring.  After the June 2012 violation, Energy Fuels increased the frequency of Radon-222 measurements at Cell 2.  When the monitoring frequency is more than once-per-year, each monitoring event is averaged over the course of the year.  Energy Fuels monitored emissions from Cell 2 in September, October and November of 2012, in addition to June 2012.  Emissions from Cell 2 in September 2012 were 26.60 pCi/m$^2$-sec.  Emissions from Cell 2 in October 2012 were 27.70 pCi/m$^2$-sec.  Emissions from Cell 2 in November 2012 were 26.10 pCi/m$^2$-sec.  Energy Fuels calculated the Mill's 2012 annual emission rate of 25.90 pCi/m$^2$-sec by averaging the readings from the four 2012 monitoring events.  In March 2013, Energy Fuels reported that it violated the emissions limit for Radon-222 in 2012 at White Mesa Mill.

36. In 2013, Energy Fuels' operations at White Mesa Mill violated the Radon-222 emission limit.  Monthly monitoring of Radon-222 emissions at Cell 2 began in April 2013 after the 2012 violation was reported in March 2013.  Nine monthly reports were filed in 2013.  The arithmetic mean of the nine 2013 monitoring events from April to December of 2013 from Cell 2 is 20.42 pCi/m$^2$-sec.

37. At the White Mesa Mill, Energy Fuels has violated and is violating its air permit and the CAA's emission limit for Radon-222.  See 40 C.F.R. §§ 61.252(a), 61.253.  Energy Fuels' violations of the CAA -- 42 U.S.C. § 7412(f)(4) and § 7412(i)(3)(A) -- are enforceable under the CAA citizen suit provision.

SECOND CLAIM FOR RELIEF
(Violation of the Clean Air Act and implementing regulations, Number of Tailings Impoundments, 40 C.F.R. § 61.252(b)(1))

38. Each and every allegation set forth in this Complaint is incorporated herein by reference.

39. After December 15, 1989, a uranium mill utilizing phased disposal is prohibited from either constructing or operating more than two tailings impoundments. 40 C.F.R. § 61.252(b)(1). This work practice standard is an emission standard, limitation, or regulation under the CAA.

40. At White Mesa Mill, Cell 4A was constructed in 2008 and Cell 4B was constructed in 2011. At the time these two tailings impoundments were constructed, White Mesa Mill had more than two tailings impoundments in operation. Cell 4A and 4B were constructed while Cell 1 was operating. Cell 4A and 4B were constructed while Cell 2 was operating. Cell 4A and 4B were constructed while Cell 3 was operating. Cell 4A and 4B were constructed while Roberts Pond was operating. Cell 4B was constructed while Cell 4A was operating.

41. Cell 4A and 4B are operating tailings impoundments. There continue to be more than two tailings impoundments in operation at White Mesa Mill. Cell 1 is in operation at White Mesa Mill. Cell 2 is in operation at White Mesa Mill. Cell 3 is in operation at White Mesa Mill. Cell 4A is in operation at White Mesa Mill. Cell 4B is in operation at White Mesa Mill. Roberts Pond is in operation at White Mesa Mill. Initial closure and reclamation measures, such as dewatering the tailings and placing interim radon barriers, have begun at Cell 2. No other cells are undergoing reclamation or interim closure. No tailings impoundment at White Mesa Mill has begun final closure. No tailings impoundment at White Mesa Mill has been covered in a manner shown to effectively control radon for at least two hundred years. Energy Fuels has not placed a

final radon barrier on Cell 1, Cell 2, Cell 3, Cell 4A, Cell 4B, or Roberts Pond.  The State of Utah Division of Radiation Control has not incorporated a written tailings closure plan for any cell or Roberts Pond into the Radioactive Materials License for the White Mesa Mill.  Subpart T of the CAA regulations governing hazardous air pollutants does not apply to any tailings impoundment at the White Mesa Mill.

42. By exceeding the regulatory limit on the number of tailings impoundment, Energy Fuels has violated and continues to violate the CAA's work practice standard. See 40 C.F.R. § 61.252(b)(1); 42 U.S.C. § 7412(f)(4) and § 7412(i)(3)(A).  Energy Fuels' violations of the CAA -- 42 U.S.C. § 7412(f)(4) and § 7412(i)(3)(A) -- are enforceable under the CAA citizen suit provision.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant and provide the following relief:

1. Declare that Energy Fuels has violated and is violating the Clean Air Act and issue such orders as are necessary to enforce the Clean Air Act emissions standards and limits;

2. Enjoin, through an injunction, Energy Fuels from conducting operations at White Mesa Mill until it complies with the Clean Air Act;

3. Enjoin, through an injunction, Energy Fuels from emitting Radon-222 in violation of the CAA standard;

4. Order, through an injunction, Energy Fuels to comply with the Clean Air Act's work practice standards applicable to uranium mills;

5. Order, through an injunction, Energy Fuels to take actions that remediate the adverse effects to public health and the environment from its Clean Air Act violations;

6.  Order Energy Fuels to pay civil penalties for present and past violations of the Clean Air Act (42 U.S.C. § 7604; 40 C.F.R. § 19.4); and fund beneficial mitigation projects or supplemental environmental projects for present and past violations of the Clean Air Act (42 U.S.C. § 7604(g));

7.  Award Plaintiffs' costs, including reasonable attorneys' fees and expert witness fees (42 U.S.C. § 7604(d)); and

8.  Provide such other relief as the court deems just and proper.

**Respectfully submitted this 2nd day of April, 2014**

>   */s/Joro Walker, Esq.*
>   Joro Walker, Esq, USB # 6676
>   Western Resource Advocates
>   150 South 600 East, Ste 2A
>   Salt Lake City, Utah 84102
>   Phone: (801) 487-9911
>   Joro.walker@westernresources.org
>
>   Anne Mariah Tapp (*pro hac vice*)
>   Neil Levine (*pro hac vice*)
>   Grand Canyon Trust
>   2601 N. Fort Valley Rd
>   Flagstaff, AZ 86001
>   Tel: 928-774-7488
>   atapp@grandcanyontrust.org
>   nlevine@grandcanyontrust.org
>
>   Travis Stills (*pro hac vice*)
>   Energy and Conservation Law
>   1911 Main Avenue Suite 238
>   Durango, Colorado 81301
>   Tel: 970-375-9231
>   stills@frontier.net
>
>   Attorneys for Plaintiff
>   Grand Canyon Trust